OFFICE SPECIALTY MANUF'G CO. v. GLOBE CO.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1896.)

No. 313.

1. PATENTABLE INVENTION—CONNECTION OF OLD DEVICES.
  The connecting of two old devices, as the two vibrating wires of a double paper file, so as to operate simultaneously, involves no invention, when the operation and function of each in their connected relation is the same as that performed by each when used alone. 65 Fed. 599, affirmed.

2. SAME.
  It requires no invention to apply a spring, previously used to hold in an open or closed position the vibrating wire of a single paper file, to the duplicate wires of a double paper file.

3. SAME—LIMITATION OF CLAIM—COMBINATION—INFRINGEMENT.
  The Shannon patent, No. 217,907, for an improvement in devices for filing papers, if valid at all, is limited to a combination containing the precise elements shown and described, or their mechanical equivalents, each for each. 65 Fed. 599, affirmed.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was an appeal from a decree dismissing a bill filed to enjoin the infringement of a patent for a device for filing papers. The defenses were that the patent was void for want of novelty; that it was void for delay until 1893 in filing a disclaimer of a claim held to be void by Judge Blodgett in Schlicht & Field Co. v. Sherwood, 36 Fed. 590, in 1880 (a decision never appealed from); and that, even if the patent could not be sustained, the defendant's device did not infringe. Judge Sage, who presided in the court below, dismissed the bill on two grounds: First, noninfringement; and, second, the avoiding of the patent by laches in filing a disclaimer. Upon the first ground his opinion was as follows:

"The patent for the infringement of which this suit is brought was issued to James S. Shannon on the 29th of July, 1878 (No. 217,907), for an improvement in that class of temporary binders which have fixed receiving wires and transfer or vibrating wires. The improvement consists—First, in giving movement to the transfer wires, on a vertical axis, for the purpose of swinging their free ends towards or from the free ends of the fixed wires; secondly, in means provided and arranged whereby the transfer wires are held stationary either in contact with or removed from the fixed wires; and, thirdly, in connecting the two swinging wires of the double file, so that, in rotating one, the other is also rotated. The vertical wires are secured preferably to a metal plate or base, which is intended also as a connection for the several working parts of the device with a board or tablet. Each transfer wire has a vertical and a curved or arched portion arranged in the plate, at the same distance apart as the fixed wires, and also so as to engage with the fixed wires when closed. These wires pass through the plate, and are supported at the foot by brackets, in which, and in the plate, they freely, but closely, turn. The free ends of the vertical fixed wires are beveled on one side, as shown in the specification, to give puncturing points. Preferably, the fixed wires are beveled from the outside upwardly and inwardly, and the ends of the transfer wires are beveled or shortened so as to meet the beveled faces of the fixed wires, and form a directly continuous ring. They are both vibrated or rotated outwardly. A crank arm is fixed to the lower end of each vibrating wire, between the plate and the brackets. A connecting arm joins the extremities of

the crank arms for the purpose of giving to the vibrating wires simultaneous movement when either of them is rotated. A spiral spring is fixed at one end of the plate, and attached at the other end to the connecting bar, for the purpose of holding the vibrating wires either in contact with the fixed wires or away from them, as may be required to have the rings closed or opened. To this end one of the arms and springs is so relatively arranged in connection with the arch of the vibrating wires as to be held by the spring at each extremity of its throw. A slot limits the throw of the crank arm and of the vibrating wires so that the latter may not bear forcibly at their points against the fixed wires. Their throw in the opposite direction is arrested by the connecting bar, which strikes one of the fixed wires. It is suggested in the specification that other means may be provided for this purpose. By varying the relative arrangement of the crank arms, the arched portion of the vibrating or transfer wires may be made to rotate in opposite diections or in the same direction; that is, either both inwardly, both outwardly, or both to either side. The preferable movement is both outwardly, in which case the crank arms are arranged on opposite sides of the vibrating or transfer wire, and the spring is connected as near as may be to one of the crank arms. If the vibrating arms be bent to form a crank, as is shown in one of the figures, the spring may directly connect thereto, or other forms of spring may obviously, it is stated in the specification, be otherwise employed. The mode of forming the crank arm, as shown in Fig. 5 of the drawings of the letters patent, is especially adapted to the single files; that is, to files having only one fixed and one transfer wire. That figure also so shows the plate or base bent over at its margin to form a bracket to support the foot of the vibrating wire. The inventor states in the specification that, when the plate is cut from sheet metal, projections for this purpose may be formed at the corners of the plate no longer than is required to form the central hanging loop and eye, which is designated in the drawings by the letter H.

"It is further stated in the specification that it is not material to the invention claimed whether the fixed wire is solid or tubular. If solid, it may be perforated near its point, as shown in Fig. 4, for the purpose of springing the contents of the file. It is not material that the fixed wires be attached to the metal plate, instead of the tablet at the rear of the plate; but the inventor says it is obviously better to secure them to the plate, in order to permit separate packing of the tablets and working parts for shipments, and to facilitate putting the parts together in proper relation. The beveled faces of the fixed wires should be arranged to meet the transfer or vibrating wires whichever way the latter may swing, so as to make as smooth and perfect a joint as possible, in order that papers may be transferred from one wire to the other without injury.

"There are four claims. The first is for the combination with the fixed wire and the base of the arched vibrating wire, having a positive rotary movement in the axis of its vertical portion, whereby its free end may be swung into contact with or away from the free end of the fixed wire, substantially as described. This claim was held invalid by Judge Blodgett in a decision rendered November 5, 1887, in Schlicht & Field Co. v. Sherwood, 36 Fed. 590. The owners of the patent acquiesced in this decision, but did not file a disclaimer until February, 1893."

The claims of the patent in issue are as follows: " '(2) In combination with the vibrating wire, C, and the fixed wire, B, the spring, G, and the crank, D or D-1, formed or fixed in the vibrating wire, C, were by the ring composed of the latter, and the fixed wire, B, may be held either opened or closed substantially as described. (3) The combination is a double file or binder of the fixed wires, B, B, the vibrating wires, C, C, crank arms, D, D-1, connecting bar, F, and the spring, G, were by the free ends of the wires, C, C, may be simultaneously swung horizontally to open and close the rings substantially as described. (4) The fixed wires, B, B, and vibrating wires, C, C, combined with operating spring, G, connecting bar, F, and cranks, D, D-1, set in opposite directions, so that the said vibrating wires move in opposite directions as they open and close.'

"Letters patent No. 198,968, issued to William C. Bussey, January 8, 1878, show a single bill file, consisting of a fixed vertical wire secured in a base,

and a second vertical wire mounted in the same base, having its upper end bent to form an arch which registers with the upper end of the fixed wire, the bent wire being so mounted that it may be turned upon its own axis so as to swing its bent end laterally into or out of engagement with the fixed wire. Patent 165,614, to Charles E. Ramus, July 13, 1875, for improvement in paper clips, shows a fixed wire, a bent wire, mounted on the same base, and arranged to register with the fixed wire, also arranged to turn on its own axis laterally into and out of engagement with the fixed wire. This device shows, in addition to the elements found in the Bussey patent, a spring consisting of the bent end or portion of the transfer wire, so formed and arranged that in its normal condition that wire is out of engagement with the fixed wire, and is twisted in its vertical portion when its bent end is made to register with the fixed wire, and is also bent in its vertical portion or sprung out of line so as to hold the bent end forcibly downward in engagement to the fixed wire. These devices contain all the elements found in either of the pair of file wires in the complainant's device excepting the arm or crank attached to the lower end of the vibratory bent wire, and the spring arranged to engage with said arm so as to hold the bent wire into or out of position with the fixed wire. But in Ashley's patent, No. 69,385, October 1, 1867, for improvement of letter files, there is shown the base, a fixed filing wire secured therein, a bent wire having a foot piece forming cranks projecting in opposite directions, one of the cranks so pivoted to the base that the bent wire might be swung laterally, being turned substantially on its own axis, and thereby brought into or out of engagement with the fixed wire, and the other arm or crank controlled by a spring so arranged as to hold the bent wire in engagement with the filing wire. In Foster's patent, No. 202,013, April 2, 1878, for an improvement in temporary binders, there are two fixed vertical filing wires, the two arms so arranged as to engage the upper ends of the fixed wires, and hold the papers thereon; the arms being pivoted to a standard secured to the base, and being arranged to swing in a vertical plane into or out of engagement with the fixed wires, and controlled by a reacting spiral spring which holds them in their position. Patent No. 202,755, April 23, 1878, to Louis Prahar, for improvement in clasps for pocketbooks, shows a fixed post secured to the base, and an arm pivotally connected to the base, provided with a crank, and arranged to swing in a vertical plane into or out of engagement with the upper end of the fixed post and controller by a spring which engaged its crank so as to hold the arm opened or closed. In patent No. 134,724, January 14, 1873, to George W. Billow, for improvement in paper files, there is shown a pair of filing arms, each pivoted with a crank, and so pivoted as to swing in a vertical plane on the base, and a spring which so engages the crank arm as to hold the filing wires open or closed when swung upon their axis.

"In Schlicht & Field Co. v. Sherwood, cited above, Judge Blodgett found that the disclaimer then filed by the complainant limiting the first claim of the patent admitted that the Bussey patent, cited above, anticipated the combination of a single vibrating wire with a fixed vertical wire, and added that the attempt of the complainant by his disclaimer to obviate the effect of that patent, by limiting his claim to a tablet or letter file containing at least a pair of wires, was ineffectual, because that was nothing more than a mere duplication of parts which did not call for the exercise of inventive talent. He said: 'There is no more invention in fastening papers to a letter file by two points of attachment instead of one than there would be in fastening a board to a piece of studding or beam by two nails instead of one.' In that opinion this court entirely concurs. Is there, then, invention in this device exhibited connecting the wires for simultaneous operation? The complainant's expert testified upon cross-examination that the principal difference between the operation of the single file and that of the double file consisted in operating the vibrating wires of the latter simultaneously by means of connecting mechanism, and that, considered as an abstract principle, he did not regard the connecting of two old devices to operate simultaneously as invention, when the operation and function of each in their connected relation was the same as that performed by each when used single. The expert was right in the view thus expressed.

"The only remaining feature is the use of the spring to hold the wires in opened and closed position. The use of a spring to hold any device in an open or closed position was common and well known long prior to complainant's patent. Equivalents for like use were shown in the patent to Boeklen, No. 187,494, February 20, 1877, for improvement in temporary binders. It is true that the precise construction or device shown in complainant's device does not appear in any of the prior devices in evidence, but it required no invention to apply the spring to duplicate wires which had been applied to single wires. Moreover, the application to duplicate wires is shown in the Underwood patent. But it is contended that there is both novelty and invention in the specific combination in the old devices recited in the claims. This brings us to the lowest plane of the patent law, where, if the distinction between mechanical skill and invention is not altogether ignored, and novelty and utility made the only test, the line between skill and invention is so shadowy and uncertain and so little regarded that in very many cases, if not the majority of them, the patent is wholly invalid. I do not see how the specific combination in this case can be recognized as patentable. But if the patent, restricted to the precise arrangement described and shown, could be sustained, the defendant would not be within the restriction, and therefore does not infringe. Its files are manufactured under letters patent No. 438,574, issued October 14, 1890. In external appearance they do not differ in any material respect from the files manufactured by complainant. The general construction is similar. The files are double, with fixed and vibrating wires, the latter arched, pivoted, and rotated into or out of engagement with the fixed wires, which have their ends beveled in the same manner as in the complainant's device. On the lower ends of the transfer or rotating wires are cranks projecting in opposite directions, having intermeshing gear teeth for causing the simultaneous movement of the rotating wires inwardly towards the fixed wires, and outwardly away from them. A spring is connected to the crank beneath the base plate, and pressing towards its center of rotation; so that, when the crank is moving across the center of motion, the spring is under the greatest tension, but, when on either side, it serves to hold the crank and wires in proper position, whether open or closed. It is claimed that this spring is the equivalent of the complainant's spring, as a leaf spring is the equivalent of a coil spring, if it performs the same functions in the same way.

"Attention is called to the statement in the specification of the Dom patent that, instead of the S-shaped spring (which is the shape employed by defendant), any suitable form of spring or springs may be employed for accomplishing the desired result, and it is altogether true that the meshing gear teeth take the place of the connecting bar in the complainant's device. The patentee of that device might have drawn his claim to cover 'connected mechanism' or 'means for connecting' or 'a connection between' the filing wires, whereby they might be operated simultaneously; but, as pointed out by counsel for the defendant, had he done this the state of the art and the authorities would have limited his claim to the precise construction shown and described. He elected to draw his claim for combinations calling for certain specified elements, and, independently of the state of the art, he must be held limited to combinations containing those precise elements or mechanical equivalents, each for each, which would relieve defendant from the charge of infringement. The connecting bar is entirely absent from defendant's device. Defendant employs a different spring, applied in a different way, attains his result by a different combination of different elements, and employs one less element than the combinations called for by the claims. The defendant, therefore, does not infringe."

Church & Church, for appellant.

Chas. M. Peck and Geo. S. Bailey, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

HAMMOND, J. (after stating the facts as above). We have carefully read the record, including the evidence of the experts. We

have compared the patents in the prior art with the patent sued on and the alleged infringing device, and fully concur with the learned judge at the circuit in the view that the patent, if valid, must be so limited in its scope that the defendant does not infringe. The reasons for this are so well stated in the opinion filed below that it is unnecessary for us to repeat them in a different form. We adopt the part of the opinion of the circuit court quoted above as the opinion of this court, and, without considering the question of laches in the disclaimer, we affirm the decree appealed from, with costs.