McCASLIN v. LINK BELT MACHINERY CO. et al.

(Circuit Court, S. D. New York. May 30, 1905.)

1. JUDGMENT—DECREE IN INTERFERENCE PROCEEDINGS—PERSONS CONCLUDED.

A decree in interference proceedings determining priority of invention between two applicants for patents is not binding, as to the date of invention by one of the parties, on one who was not a party, and does not claim under either patent.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1230.]

2. PATENT—ANTICIPATION.

That a prior patent for the same invention was issued to the same patentee does not avoid anticipation.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 79.]

3. SAME—CONSTRUCTION OF CLAIMS—COMBINATION.

Where a claim of a patent is for a combination, it must be for an operative combination; and if an element essential to make it operative is shown and described in the specification, but is omitted from the claim, it must be read into the claim.

4. SAME—INFRINGEMENT—ENDLESS CHAIN CONVEYORS.

The McCaslin patent, No. 503,870, for an endless chain conveyor, claims 2 and 4, cover improvements only on what was known in the prior art, and must be strictly construed and limited to the construction shown, and the patentee is entitled to invoke the doctrine of equivalents only where the changes are colorable merely. As so construed, such claims *held* not infringed by a conveyor in which the mechanism operates in a manner substantially different to accomplish the same results.

In Equity. Suit for infringement of patent.

Ewing, Whitman & Ewing (Thomas Ewing, Jr., of counsel), for complainant.

Parker & Carter and Howson & Howson, for defendants.

HAZEL, District Judge. This action involves the construction of claims 2 and 4 of United States letters patent No. 503,870, dated August 22, 1893, relating to endless chain conveyors, issued to George McCaslin, inventor. The conveyor consists of a series of gravity buckets pivoted in a chain which has wheels running on a track; each bucket being provided with extended lips, which, when the buckets move along a path or track in a horizontal position, overlap in such a manner that the lip on the one bucket overlaps the lip on that next adjacent. The buckets are maintained in a normally upright position by the general action of gravity, irrespective of the vertical and winding character of the track upon which they are mounted or moved. By the general arrangement of the track and buckets, the material being transferred is carried continuously in one direction—that is, from the lower to the upper horizontal track, where it is dumped into bins or chutes—and after discharging the same the buckets move along towards the downward path or starting point. The specification states:.

"The object of the invention is, in the main, to provide the buckets of the conveyor with plates or lips which project out and overlap in such a manner that the lip on one bucket overlaps the lip on that next adjacent, whereby, when the buckets are moving along a horizontal or slightly inclined track at the loading point, the coal or other material running into the conveyor from

a chute will not fall between the buckets. Means have before been devised and employed to attain this desirable end, but I find it important to confine the means used to the buckets themselves, for the sake of economy in construction, in space occupied, and in power, and in order, also, to increase the durability of the conveyor. But in order that such conveyor may be adapted for general purposes, and not be confined simply for use as an elevator, it is essential that means be provided for turning the empty buckets on their return so that the lips or plates thereon may properly overlap, and my present invention includes such means."

The drawings attached to the patent show three forms of the apparatus. Figure 1, which is the form alleged to be infringed by the defendants, shows a lower and upper horizontal track, on which the buckets are to be loaded and unloaded, respectively, and ascending and descending tracks, which apparently are integral with the horizontal runs; thus forming an oval-shaped loop or cycle. The specification disclaims the feature for driving the conveyor, and declares that various forms of drivers may be used. In practice the entire structure employed may be rectangular or tortuous. Different materials, including liquids, may be carried by the conveyor, which is so constructed as to enable tranference from the loading point, which may be outside of the building, to the place of unloading within, or from one room to another in a factory or building. The system of conveyors is chiefly employed for handling coal in power houses and other large factories and modern industries, and may also at the same time be used to remove ashes from the boiler room. The carrying capacity is measured by the size of the buckets employed. The claims of the patent relied upon are as follows:

"(2) In an endless chain conveyor, the combination with the track, track-wheels and endless chain, of the gravity buckets suspended at intervals in the chain, and provided with overlapping lips as described, and means substantially as described for preventing the collision of the loaded buckets at the point where they pass from the lower track to the ascending track, as set forth."

"(4) In a conveyor, the combination with an endless track, the track-wheels thereon for carrying the chain, and the endless chain, of gravity buckets, c, pivotally suspended at equal intervals in the chain, and each provided with dumping lugs, and lips, c, x, one at each end, the lip on the rear end of a bucket overlapping the lip on the front end of the following bucket when the buckets are moving along a horizontal track, and means substantially as described for tilting the buckets and shifting the lap of said lips when the buckets move onto the descending track, as set forth."

The features of claim 2, describing means to overcome the collision of the buckets, and of claim 4, for tilting the buckets and shifting the lap of the lips so that the buckets may pass freely from a horizontal to a vertical track, or vice versa, are claimed to possess novelty. The elements of claim 2 are for a combination of an endless chain, track, track-wheels, buckets, with overlapping lips at their ends, suspended in series on the chains, and means to facilitate the movement of the buckets from the lower horizontal track to the ascending track, and thence along the upper track toward and down the descending track to the loading point. In the fourth claim the essential feature of the combination claimed is dumping lugs on each bucket, together with means for tilting or shifting

(Fig. 1) or turning (Figs. 3 and 4) the lap of the lips when moving from the upper track to the downward path.

Neither the utility nor the validity of the patent is questioned; the contentions being that the scope of the claims is limited by the prior art, and that the defendants are not infringers. The patent has never been adjudicated, and the interference proceeding in the Patent Office entitled "Hunt v. McCaslin" dealt with the date of the invention, and not with the question of prior devices. Complainant claims to have conceived the invention in August, 1886, and to have then disclosed it to others. The date of the application in suit is April 8, 1893. The interference proceedings, for reasons sufficient to the Court of Appeals for the District of Columbia, terminated in complainant's favor; and his application was found to anticipate Hunt's date of filing, which was September 10, 1892. That decree is not binding upon the defendants, they not having been parties or privies to the proceeding nor claiming under the patent issued to Hunt. Edward Barr Co. v. N. Y. & N. H. Automatic Sprinkler Co. (C. C.) 32 Fed. 79; Western Electric Co. v. Williams-Abbott Electric Co. (C. C.) 83 Fed. 842; Wilson v. Consolidated Store Service Co., 88 Fed. 286, 31 C. C. A. 533. The patentee gave testimony tending to show that the date of his invention was prior to the Davidson British patent hereinafter mentioned, and in support of his testimony a sketch made by him of the machine was produced. This showing, however, is not persuasive, and accordingly the Davidson patent must be regarded as a proper citation to acquaint the court with the state of the art.

The desideratum of McCaslin was to produce a practical construction which would enable loading from a running hopper or chute while the buckets move along the track, without spilling or wasting any of the material, and also to prevent collision by the interlocking of loaded buckets in passing from the lower to the ascending track. It is undoubtedly true that complainant's overlapping system prevents spilling between the buckets. But a comparison of the several conveyors of the prior art (especially that of McCaslin's earlier patent, No. 486,809, dated November 22, 1892) with that of the patent in suit leads to the conclusion that the claims of the latter must be strictly construed, and that complainant is not entitled to a range of equivalents sufficiently broad to include defendants' method of accomplishing the same result. The complainant was not a pioneer, and the new features of the patent in suit are narrowed by his earlier patent and by the patent to Davidson. That a prior patent for the same invention was issued to the patentee, of course, would not avoid anticipation. Doig v. Morgan Machine Co., 122 Fed. 460, 59 C. C. A. 616; Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854, 37 L. Ed. 710.

To construe the claims in suit, the nature of the patent and the state of the art at the time of patenting, or when the invention was discovered, is important. The range of equivalents to which the patentee is entitled depends altogether upon the character and extent of his improvements, and the degree of merit is measured by the value of his contribution to the public. Applying the basic

rules to the facts of the case, a pertinent inquiry is, has the inventor, by the overlapping lip arrangement, projected into an apparatus concededly familiar to the art something possessing novelty? Has he achieved a practical improvement in a device which prior thereto was incapable of successful operation? Evidence was given to show that the apparatus in suit was commercially superior to the earlier patent, and went into extensive public use. This testimony, though important, has not the force to warrant holding that the prior McCaslin patent was impracticable, and that the later device led from failure to success. Whatever novelty exists in the patent in suit is in the nature, as already intimated, of an improvement upon that which was known to the art.

The testimony of the mechanical experts regarding the scope of the claims is in conflict. According to the complainant, the merit of the patent, briefly stated, consists in an arrangement by which the buckets are enabled to preserve a certain symmetry or alignment while they are in motion and passing toward and down the descending path, so as to permit loading from a continuous running spout, and prevent spilling of material while loading. To attain this object, the patentee added an extended lip at the ends of the buckets, and devised means for overcoming interference and impingement of the lips which is apt to occur in traversing a circular or tortuous track. That gravity buckets arranged in series and maintained in a normally upright position, whereby they may be automatically emptied of their contents by capsizing at different points, and thereafter readjusted, were familiar to the art, is shown by an inspection of patent No. 331,961, dated December 8, 1885, to W. Griesser. In this patent the buckets are lipless, and the arrangement such as to permit them to turn upon curves while in motion without interference. The absence of overlapping lips upon the buckets, however, prevented loading from a continuous streaming spout without spilling the material between the buckets. Patents issued to Hunt show a lipless gravity bucket, and a portable mechanism for preventing the material from spilling. In the Hunt patents the buckets must be loaded at certain predetermined points with the aid of a local feeding device. The patents mentioned do not disclose the essential features of the claims in suit, and are material only to indicate the advance made by McCaslin in his earlier patent, No. 486,809. It is upon this patent that the defendants lay special stress to limit the claims in controversy. The specification of the earlier McCaslin patent describes a gravity bucket conveyor wherein each bucket is provided with a single lip overlapping the next succeeding bucket, together with means for shifting the buckets to enable them to pass around the complete cycle without collision. The construction shown in figure 1 of the earlier patent resembles that of figure 3 of the patent in suit. Indeed, a resemblance between the earlier and later McCaslin patents is not denied. The lap of the lip in the earlier patent was not changed, the buckets being turned over by gravity; nor were means provided for preventing collision between the loaded buckets as they passed toward the ascending track. The object of the pat-

entee was to make the prior art more practicable, by permitting the buckets to be carried from one point to another, irrespective of the configuration of the tracks, and to prevent spilling of the material at the loading point. To accomplish this object, each bucket was provided with a single lip, and upon the side was placed an upwardly projecting bolt, arranged to engage a bar at the loading point, and prevent the rear end of the bucket from tilting too far while being loaded. As stated, the buckets, in passing down the descending track in succession, made a complete turn, instead of being tilted as in the patent in suit, and on reaching the lower horizontal track the stopping device held them in a tipped position until the danger point of collision was passed, when the bucket righted itself by gravity. The claim is here made that the complainant has progressed the prior art in two important particulars, namely, that by his arrangement of double-lipped buckets, without the use of a special loading device, the running material will not spill between the buckets; secondly, that by the employment of his method there may be a complete revolution around the track, without interference between the buckets, by simply tilting them in the manner described. The principal features by which the later McCaslin patent is differentiated from the earlier exists in the use of cams for tilting the buckets, and maintaining the overlap by the employment of the guard rail, instead of mounting the buckets on the chain to practically accomplish the same result. The operation for guiding the movement of the buckets down the descending track, as specially set forth in claim 2 in suit, is not thought to be such as to require holding that the defendants' method is a substantial equivalent. Various ways are shown in the specification for changing the overlap; one having cams on the upper and lower track, located near the vertical path; the other (figures 3 and 4) having a single cam, located at the upper track near the downward pathway, which operates to turn the bucket half over. The horizontal guard rail shown in figures 1 and 4 is a feature of claim 3. According to the specification, it performs the special function of preventing the tilting of the buckets in case two adjacent buckets were unequally loaded. The specification states that if there were no such device the buckets would collide at the point where they left the lower horizontal track and passed onto the ascending track. Defendants contend that the functions of the guard rail should be read into claim 2, as an essential element. I am of opinion that the claim must be construed to include such device, as the means by which the result is attained, namely, the establishment of the overlap of safety, is, to a degree, owing to the presence of the guard rail. Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136; Wellman v. Midland Steel Co. (C. C.) 106 Fed. 226. In the latter case Judge Baker said:

"Where the claim is for a combination, it must be for an operative combination; and if an element essential to make it operative is shown and described in the specification, and is omitted in the claim, it must be read into the claim. Such an interpretation is justified and required by the concluding language, 'substantially as set forth.'"

See, also, Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 54 C. C. A. 584.

In the English Davidson patent of February 2, 1892, No. 2,046, there is shown a device for carrying material from one point to another. The carrying trays are pivotally mounted, and have overlapping lips at each end, and dumping cams are located near the two corners. Although material can only be carried upward to a straight track, or downward onto a straight track, yet the carrying trays, which have lips at their ends, are arranged in series; the purpose being to cause the lips to overlap, and prevent the material from falling between the trays at the loading point. The overlapping and tilting features of the Davidson patent resemble those of the McCaslin patent in suit, though no means are described for preventing interlocking of the trays. In view of the earlier McCaslin patent and the English patent to Davidson, which is considered merely to construe the claims in suit, and not to anticipate, the patentee is simply entitled to the protection of his improvement, and can only invoke the doctrine of equivalents if the method adopted by the defendants is a colorable invasion. Walker on Patents, § 184.

After a careful examination of the prior patents and the evidence construing the claims in suit, I have reached the conclusion that the defendants' system and mode of operation is essentially different from that of complainant. The defendants' device has the familiar endless chain, the links, the wheels, track with its curves, gravity buckets with overlapping lips, and dumping lugs. It has an essential additional feature, to wit, the links of the chain have outside extensions, on which the buckets are pivoted. In other words, the buckets are not suspended in the chain, as in complainant's device, but on projections from the chain. It has no overlapping arrangement at the so-called danger points, and there is no troublesome interference of one bucket with another. No cams are used, or means for tilting or shifting the buckets to change the overlap. Neither has defendants' apparatus a guard rail.

Defendants' witness Prof. Carhart, who is corroborated by the witness Livermore, testifies:

"The defendant gets his buckets around the angle, not by shifting or changing the overlap, but by separating the buckets so that they are further apart than the entire width of one of them. * * * Each bucket swings clear of its neighbor, and is free to change its direction and motion vertically up or down."

The elicited facts show that the primary result of changing the overlap in defendants' mechanism is attained by the sudden downward and forward shifting of the extensions of the chain links, which are connected with the buckets, and which not only cause the lips of the buckets to slightly separate, but cause simultaneous action between the chain and the buckets. This feature is probably more clearly expressed by stating that at the ascending or descending points the buckets, while in motion, are rapidly lifted by the moving action of the link extensions in an upward and forward direction, and one bucket momentarily precedes another, and then,

owing to the movable action of the link extension, rapidly recedes into its normal position; meanwhile continuing in its path toward the loading or unloading point. According to defendants' expert, the connection between the chain and buckets in defendants' apparatus produces a system of nonoverlapping buckets in passing around the curve, while in the apparatus of McCaslin the spacing between the buckets is such that the lips of the buckets constantly overlap, or remain in a position for overlapping, and, in order to change their position, either one or both of the buckets must be tilted from the horizontal position in which they are normally suspended.

The record, as a whole, satisfactorily shows that a difference exists in the mechanism adopted by the defendants. The result of the operation of defendants' device is the same as that of complainant, but the mode of operation is substantially different. Kokomo Fence Co. v. Kitzelman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689. The elements of claims 2 and 4 are not infringed by the defendants. The bill is therefore dismissed, with costs.