BRUNSWICK–BALKE–COLLENDER CO. v. KOEHLER & HINRICHS.

(Circuit Court, D. Minnesota, Third Division. February 25, 1902.)

**1. PATENTS—PRELIMINARY INJUNCTION AGAINST INFRINGEMENT—PRIOR ADJUDICATION.**

A decision sustaining the validity of a patent, where the only defense made was that the device did not disclose invention, but was an obvious one, involving only mechanical skill, is not sufficient to warrant the granting of a preliminary injunction against infringement by a court in another circuit, where the defense of anticipation is made in good faith, and supported on the preliminary hearing by affidavits which show a reasonable probability that it may be established on the final hearing.

**2. SAME—BOWLING APPARATUS.**

A preliminary injunction denied against infringement of the Reisky patent, No. 599,477, for a returnway for bowling alleys, upon the showing made by defendants in support of the defense of anticipation.

In Equity. Suit for infringement of letters patent No. 599,477, issued February 22, 1898, to Emil Reisky, for an improvement in bowling apparatus. On motion for preliminary injunction, based on the decision of the circuit court of appeals for the Second Circuit, sustaining the patent sued upon in this case. Brunswick-Balke-Collender Co. v. Thum, 50 C. C. A. 61, 111 Fed. 904.

A. C. Paul and C. C. Linthicum, for complainant.
John E. Stryker and P. J. McLaughlin, for defendant.

LOCHREN, District Judge (orally). It appears in this cause that the complainant and defendant are both engaged in the manufacture and sale or construction of bowling alleys, and that they both use at the present time a returnway substantially similar in form and idea, and performing the same functions. The complainant claims the sole right to use that device, by reason of the patent that was issued to one Emil Reisky (being patent No. 599,477, dated February 22, 1898), which has been introduced in evidence.

Realizing the great advantage to our people, and to humanity in general, that has arisen from the advances made in the arts and mechanics by inventors, and for the purpose of encouraging and rewarding such persons, patent laws have been enacted, giving to inventors a monopoly for a limited time, fixed by the statute, of their inventions, with the right to dispose of the articles, and to have and enjoy the profits; and there is no doubt but that they and their assignees are entitled to such profits as the law gives them. Now, the complainant here, as the assignee of the inventor and patentee, claims that its rights are infringed by the use of this device by the defendant, and seeks to have defendant prevented, by injunction, pending the action and pending the determination of the suit, from carrying on the business of constructing this device in bowling alleys. In order to succeed in this application for a temporary injunction, it is necessary that the right of the complainant should be fairly clear, and that there should remain in the mind of the court no reasonable or substantial doubt as to its right to the relief asked, because an injunction is a harsh remedy, which prevents a person enjoined from doing, unless

the other party has a monopoly, something that he would naturally and ordinarily have a right to do. That is, an injunction should not issue simply because the party complainant has obtained a patent describing the machine or appliance, for the reason that it is well known that mistakes are made, and, while the obtaining of a patent is prima facie evidence of its validity and of invention, it is not so convincing, standing alone, that courts will enjoin other parties from using the same appliance until the right of the patentee is established by something further than the patent itself. This is ordinarily done by a trial in a suit upon the patent. When that has been done, if it appears that there was nothing collusive about the suit; that the defense covered all reasonable defenses, and was strenuously made,—then the decision of another court will usually be regarded as giving the complainant a right to an injunction, and as establishing his right so nearly without doubt that a court will be authorized in enjoining an infringer, if the infringement is apparent or admitted, as it is in this case, where no question is made as to the infringement. Of course, the decision that is relied upon as giving a right to a temporary injunction on the commencement of a subsequent suit is one that should be examined by the court, when the application is made, for the purpose of seeing whether it is a judgment that has followed a contest of the character that I have indicated,—one that was bona fide, made strenuously, and made to cover all the points and defenses that are urged in the present suit, at any rate.

I do not think there is any question but that, so far as appears from the case, the prior suit was honestly defended, and there does not appear to be any evidence of collusion. The case seems to have been defended upon the single idea that the so-called invention was not an invention, and was not patentable; that it was a device that would have occurred to any ordinary mechanic, upon the necessity being shown to him, or upon being asked to obviate the objections to previous devices of that kind. That seems to have been the idea of Judge Thomas in both his decisions. It appears that the defendant did not introduce any testimony in support of that defense. The first time it was presented to Judge Thomas, it did not differ very much from a demurrer to the bill; but the complainant in that case was permitted to introduce further testimony, and the testimony so introduced was for the purpose of showing that the need for such a device was apparent to those who were in the habit of using bowling alleys; that they had endeavored to correct the objections to the returnway in bowling alleys before that; that therefore it had been called to the attention of mechanics, and that they had adopted various devices for the purpose of obviating these objections, by what has been called "shot bags," "whisk brooms," and other appliances that are referred to in the opinion of Judge Lacombe, but they had not hit upon this appliance for which Mr. Reisky obtained a patent. Therefore, in view of that evidence, showing the need of some appliance of that kind, it was obvious that a remedy had been sought, and had been attempted to be made, and that this plan of Reisky's had not been hit upon. It was held by the court (and, it seems to me, very properly) as sufficient to show that although this was simply an application of an ordi-

nary law of gravitation, and that the appliance would seem so obvious that it was a matter of wonder that it had not been hit upon before, the very fact that it had not been hit upon before, when remedy was sought, was sufficient to give it the character of an invention, so as to entitle it to a patent. I may say that inventions of this kind have been quite numerous, and are referred to by courts in various decisions found in the reports of patent cases. Apparently, the only issue that was contested or litigated in the prior case was as to whether the device was patentable, or as to whether it was so obvious a contrivance that any skilled mechanic, upon a necessity for something of the kind being suggested to him, upon the objection to the devices in use, would have almost certainly hit upon it; and the question as to its being anticipated was not contested in that case. Now, in this case the defense is made, and is urged strenuously, that the defendant will be able to establish that defense of anticipation when the time comes for producing the evidence. The question is whether the court, under these circumstances, simply by reason of the patent having been issued, and of this decision in the court of appeals of the Second circuit upon the question that was before it, is warranted in awarding a temporary injunction at this time, and before this defense can be heard. It is true that the rule is that it should be made to appear fairly that this is a bona fide defense, that there is some reason to believe that it may be successful, and that it is proposed in good faith; and if this is true, as this question was not litigated before, it ought to be sufficient to prevent the issuance of a temporary injunction.

Now, the evidence on the part of the defendant is made up of affidavits which are necessary in applications of this kind, and many of them are contradicted by affidavits of other persons who had similar opportunities for observing in relation to the same matters. Some of them, perhaps, of themselves, do not carry very strong weight to the mind of the hearer. For instance, I do not think very much weight ought to be given to the affidavit (it did not impress me, though the complainant has not been able to contradict it) of Mr. Montgomery as to a device of this kind having been used at the hotel in the Catskill Mountains a long time ago. He himself being a builder of bowling alleys, and, of course, of returnways, the very fact that since this Reisky patent has been obtained, and constructions have been made in accordance with it, it at once arrested the attention of the persons engaged in constructing bowling alleys, so that it disposed substantially of everything that went before, would make it seem certain that, if a person engaged in the bowling-alley business had seen a contrivance of this kind up in the Catskill Mountains, he would immediately have adopted it in the construction of his own bowling alleys afterwards, and not allowed it to remain unused for a long time, and that the knowledge of it would have spread more rapidly than it appears to have spread. There is also this case of the bowling alley of Albachten, in St. Paul. From the drawing of it, it is apparent that although it embodies, perhaps, the conception of this patent, it was constructed in a manner which might not attract the attention of a person observing it, as much as it would if it had been constructed exactly according to the design which is shown in the drawings of the

patent. That is, it is nearly a straight incline, and the variation from that might not very readily be observed by a person casually looking at it, and not stopping to consider it. And it is hard to discredit the testimony of a person who owned the building and worked about it, both as a bowler and in setting up the pins, for the long time that it is claimed to have existed at this place, although its form might not be observed by a person who casually came there. And while it seems to have included the idea of the patent, still, there was so little of it, —it was so nearly a regular slope,—that even its peculiarity might not have attracted the attention of those who were using it. Of course, the fact that it was not brought in here, I do not attach any weight to, because, if it was torn down, it would be impossible to show how it was put up, even if they brought the pieces here. Neither the boards nor the brackets themselves would show that; but, if the walls remain, they would be more likely to explain how it was constructed, by observing how these brackets were attached to the walls, from what would remain at this time. There is also this patent of Van Oeyen, which seems to have had a peculiar returnway, although this was a mere toy or machine, and perhaps entirely unfitted to be used, in all the details of its construction, in an ordinary bowling alley. Nevertheless, it seems to contain, to some extent, at least, and perhaps in full, the idea of the patent in question. There is a returnway, there is a descent, then a horizontal movement, and an opposite incline for a ball to pass up, which would tend to retard its movement, and a place for the balls to pass into and remain. It seems to have the features of the Reisky patent. I do not think that the contrivance of this man in Toronto has that idea, because, although it has a sharp descent, and also an incline the other way, which would retard, and perhaps stop entirely, the movement of the balls, there would be a backward movement, different entirely from the Reisky patent, from not having a level place or a proper receptacle at the players' end for the balls to run onto and remain quiescent. In fact, this incline backwards, instead of being a benefit, would seem to be worse than a straight incline, as the balls would acquire force in running back, which would meet the balls coming the other way, and make a concussion, I should think, greater than if there were no contrivance of that kind at all.

It does not seem to me that the questions raised in this case have been passed upon in the case in New York, or that the defense raised here has been passed upon at all. The defense, if made out, is a sufficient defense to defeat the patent, and show that there has been anticipation. As long as that defense has not been litigated, and is urged in good faith, there is here some evidence I cannot avoid considering. The Van Oeyen patent has been a matter that has been of record for a long time, and there is no question but that that patent was taken out bona fide. That does not rest upon any fault of memory or recollection. The testimony as to this other device in the city here is such that I cannot brush it aside and say that I discredit it entirely.

I am inclined to think that the motion should be denied. Ordered accordingly.