## SCHENCK v. SINGER MANUF'G CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1897.)

PATENTS—INVENTION—SEWING MACHINES.

The Miller & Diehl patent, No. 224,710, for improvements in band-wheel bearings for sewing machines, *held* to show patentable invention as to claims 1 and 2, notwithstanding the apparently simple character of the change made, in view of the beneficial results achieved, and the obvious defects of prior constructions, which had for many years baffled other inventors and mechanics. 68 Fed. 191, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by the Singer Manufacturing Company against Allen Schenck, president of the New Home Sewing-Machine Company, for alleged infringement of a patent. The circuit court rendered a decree in favor of complainant (68 Fed. 191), and defendant has appealed.

John Dane, Jr., for appellant.

Livingston Gifford (Gifford & Bull, of counsel), for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The decree sought to be reviewed by this appeal adjudged the validity of the first and second claims of letters patent of the United States to Miller & Diehl, No. 224,710, granted February 17, 1880, and the infringement of these claims by the defendant. At the close of the argument we reserved for further consideration the single question whether, in view of the prior state of the art, the court below should have adjudged these claims void for want of patentable novelty. If the first claim is valid, the second certainly is, because it is for the same combination, with limitations which include some additional minor improvements. The consideration of the case will therefore be simplified by confining our attention to the alleged invention of the first claim. That claim covers an improvement in band-wheel bearings for sewing machines, which consists, essentially, in introducing a brace into the frame of the table supporting the sewing mechanism, which is

independent of the table top, and a short shaft or crank for carrying the pedal mechanism, mounted one end upon the brace, and the other upon the leg of the table. By this change of organization, the patentee simplified and condensed the parts of pre-existing bearings, and lessened the cost of construction, besides making a more efficient bearing. The pre-existing bearings were of three types. One is represented in the patent of 1864 to Stoop, where the shaft was mounted one end on each of the two table legs, and was consequently nearly as long as the table, had to be made heavy to prevent sagging, and vibrated with the vibrations of the table top. Another is represented in the patent of 1871 to McCann, where a short shaft was mounted on one of the legs of the table. This type is known as the "overhung stud" bearing. The pitman is applied outside the bearing, and in such a construction there is a tendency to sag and jam the shaft, thus producing wear and friction. Another is represented in the patent of 1872 to Brill, where a hanger was bolted to the table top, and the short shaft was mounted one end in this hanger, and the other in one of the legs of the table. By this arrangement the vibrations of the table top are communicated to the shaft. During the period of nearly 20 years intervening between the patent to Stoop and the patent in suit, there were many attempts to obviate the disadvantages which existed in these different types of bearings. The long shaft was discarded altogether. The Brill construction, if it ever went into use, disappeared. The overhung stud bearing became the generally accepted type, and inventors busied themselves with attempts to improve it. Its defects were obvious. One of these attempts appears in the patent of 1871 to Wild, where the patent points out how much accuracy of construction these bearings require, and how quickly they "wobble, jar, and rotate irregularly," and how they "involve frequent and expensive repairs." In spite of the efforts made, the defects were not satisfactorily obviated. They are rehearsed again in the patent to Donovan, of a few months later date than the patent in suit, but which was applied for while the application for the patent in suit was pending. After referring to the overhung stud as the construction almost invariably used, Donovan states:

"This method has been open to serious objections, among which are the great accuracy required in the fitting of the wheel upon its bearings, in order to prevent lateral irregularity in the movement of its rim; the unequal wear upon the stud and upon the axial opening in said wheel, in consequence of the thrust of the pitman; and the large size of said bearing stud required to enable it to withstand in any degree such unequal side pressure, resulting in the creation of a large amount of friction surface, which materially increased the labor of running the machine."

By the improvement covered by the first claim of the patent in suit, the disadvantages thus referred to have been obviated, and, as has been said, the parts are simplified, and the cost of construction lessened. The patentees inserted a brace of sawbuck form between the legs of the table, bolted it to the legs, and located the

FIG. I.

crank between the center of the brace and one of the legs. The legs or side pieces of the frame, being usually made of metal, and bolted together substantially, keep the two bearings of the shaft in substantial alignment, and enable a short and light shaft to be used.

The patentees were not the first to introduce a brace into a sewing-machine table, or even a brace of saw buck form. That had been done as early as 1872, as appears by the patent to Leavitt. Leavitt, however, used his brace merely to strengthen the table, and

his patent shows a short crank, mounted at one end in one of the legs or sides of the table frame, and at the other in a large metallic loop, which is bolted at each end to the same leg or side. Cross braces of form and proportions nearly identical with the brace of the patent had been used for many years in the sewing machines made by the complainant, but only for the purpose of strengthening the frame.

In view of the prior state of the art thus exhibited, it seems now to have been a very simple thing to do what was done by the patentees. It was only necessary for them to take the Leavitt frame, change the location of the brace, perhaps enlarge the diameter of its arms, remove the metallic loop, and insert in the cross brace the short shaft shown in the patent to Brill. But the record in this case affords extrinsic evidence of a most convincing kind that what was done by the patentees was not an obvious thing, and that the change of organization was not one which the skilled mechanics of the particular art could have suggested and introduced without the exercise of inventive faculty. This evidence is supplied, not only by the many patents for improvements, which fell short of producing the simple, compact, less expensive, and more efficient bearings of the patent, but by the sterility, during 20 years, of the great army of mechanics employed by the various sewing-machine manufacturers. The complainant itself, from 1865 to 1879, used the overhung stud, and for several years of that period its machines contained cross braces readily adaptable to the office of the patented brace. It employed a vast number of skilled workmen. Yet to none of them did the suggestion occur which is embodied in the new organization of the patentees. The simple change made by the patentees has proved so valuable that the complainant has adopted it in more than 9,000,000 sewing machines. The sewing-machine company whose president is the defendant in this suit has also adopted it. No one can examine the bearings of the patent, even cursorily, and compare them with those previously in use, without recognizing the meritorious improvements which they embody. We agree with the court below that these improvements were invention, and not merely the exercise of mechanical skill and adaptation.

The decree is affirmed, with costs.