BRUNSWICK–BALKE–COLLENDER CO. v. THUM et al.

(Circuit Court of Appeals, Second Circuit. November 18, 1901.)

No. 10.

PATENTS—INVENTION—BOWLING APPARATUS.

> The Reisky patent, No. 599,447, for an improvement in bowling ap-
> paratus, which consists of a runway or trough for the return of the balls,
> so constructed that the balls roll rapidly down an incline until near the
> players' end of the alley, and then up an ascending incline, which grad-
> ually checks their momentum, breaks the force of their impact, and
> prevents their injury, while apparently embodying only an obvious
> mechanical expedient, must be conceded patentable invention, in view
> of evidence showing that for many years mechanics had been engaged
> in attempts to improve the old-style runways to obviate the same defect,
> but that the patentee was the first to use the double incline for the
> purpose, and that his invention at once came into general use.

Appeal from the Circuit Court of the United States for the South-
ern District of New York.

This cause comes here upon appeal from a final decree of the cir-
cuit court, Eastern district of New York, dismissing the bill. The
suit is for infringement of United States letters patent No. 599,447,
granted February 22, 1898, to complainant, as assignee of Emil
Reisky, for "improvement in bowling apparatus."

M. B. Phillipp (J. J. Kennedy, on the brief), for appellant.
August Reymert, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The improvement of the patent re-
lates to that part of a bowling alley known as the ball returnway or
runway, which returns the balls from the pit end of the alley to the
players' end. The old style of runway consisted of a track or trough
which inclined downwardly all the way from the pit end to the play-
ers' end, down which the balls rolled with a speed increasing all the
way, and dependent upon the degree of inclination given to the track.
There were objections to this old style of way, which will be referred
to in more detail further on. Briefly stated, most of them arose from

the circumstance that, not being retarded in its course, the ball frequently came home at the players' end with a "smashing" impact. The specification of the patent, after referring to the defects of the older structure, states that the patentee constructs—

"The ball runway with a descending portion beginning at the pit end of the alley, where the ball hopper or cage is located (if one be used), and running thence towards the players' end of the alley, and also with an upwardly inclined or ascending portion at the vicinity of the playing end of the alley, which 'up grade,' so to speak, takes the impetus or inertia out of the balls just before they are landed on the extreme end portion of the runway, or into or on that part of the runway or receptacle connected therewith, from which they are to be selected or picked out by the players for use in bowling."

The specification further states that:

"In practice the operation and effect is simply this: That the balls start from the pit end of the alley in my improved returnway, and, while they are sent home or delivered at the playing end of the alley as rapidly as desirable, they travel fast from the time they leave the pit end of the alley until they reach the ascending or up-grade portion. c, of the runway, which up grade simply operates to check the speed of the balls, or take out their inertia, so that they land on the terminal or receptacle, d, with practically no speed, or, in other words, without any momentum sufficient to produce any injurious effect on the balls."

And claim 1 (the only one in controversy) reads as follows:

"(1) A bowling-alley returnway, comprising a descending or downwardly sloped portion, beginning at the pit end of the alley, and returning towards the players' end, and an ascending or up-grade portion connected therewith, and located near the playing end of the alley, which merges into the ball receiving and retaining terminal of the runway, all in such manner, as hereinbefore described, that the balls put into the receiving end of the runway will roll downwardly toward the playing end of the alley, and then, ascending the up grade, or ascending portion. c, of the runway, will pass thence onto the terminal or ball receptacle at the players' end of the returnway without much shock or concussion, as hereinbefore set forth."

The facts in the case at bar are closely analogous to those which were before this court in Schenck v. Singer Mfg. Co., 23 C. C. A. 494, 77 Fed. 841. The improvement consists in an extremely simple, and, it would seem, perfectly obvious, application of common knowledge as to the law of gravitation. Were there nothing in the record but the bare statement of facts above set forth, we would be inclined to concur with the court below in the proposition that:

"Had any skilled mechanic been asked to perfect a structure that should gradually arrest the momentum of the returning ball, an ascent would obviously have been the structure needed."

But in this case, as in the Singer Case, the evidence shows conclusively, and, indeed, without contradiction, that this very demand for an arrester of the returning ball was before skilled mechanics for many years, and yet no one before Reisky hit upon the device which now seems so obvious. The defects of the old system were serious. The time required for the return of the ball was not uniform, and in its entirety was slow. If started with a shove, it came more quickly, but, if merely placed in the trough, it made but slow

time at the beginning; and the player, desirous often of using a particular ball, already played, became impatient. Whether started with a shove or not, its velocity steadily increased, and it was running at its highest speed when it came home against the post or other ball at rest at the players' end. Moreover, this speed was generally so high that the surfaces of the balls were broken or chipped, particularly at the vicinity of the finger holes, and thus soon became unfit for use. This damage put the alley keeper to considerable expense in keeping the balls in fair condition, or in getting new balls, and also resulted in great dissatisfaction among the players at the damaged condition of the balls. There was also constant danger of an incautious player having his hand among the homed balls when the returning ball smashed in. The evidence shows that this condition of affairs had lasted for a long time; the old style of runway persisted for 40 years. During this period there was a constant demand for an improvement which would remedy the difficulty, and to that demand the skilled mechanics who put up bowling alleys responded. Various devices were contrived,—all of them, save one, independent of the trough itself. Suspended shot bags of various shapes, some with appendages in the shape of patches or belts, weighted sections of hose pipe, whisk brooms so set that the ball would have to push through them, pieces of stiff leather arranged shutter-wise across the trough, pivoted levers having a piston entering a dashpot, are among the devices independent of the trough. It was also sought to retard the ball by successive transverse pieces of rope at the sides or bottom of the trough. So many of these devices are shown that it is apparent that the skilled mechanics were for years trying to find some way properly to retard the ball, and the proof conclusively shows that all of them were unsatisfactory. Not one of them secured retardation by a change of grade of the trough itself, until the patentee disclosed his simple method, which has so commended itself that now, within three years after the issuance of the patent, 90 per cent. of the existing bowling alleys have the new style, or Reisky, returnways. In the face of this evidence, we cannot hold that his improvement is devoid of patentable invention. Infringement of claim 1 is manifest, and apparently not disputed.

The decree is reversed, with costs, and cause remanded, with instructions to decree in conformity with this decision.