## PETERS v. UNION BISCUIT CO.

(Circuit Court, E. D. Missouri, E. D. February 13, 1903.)

### No. 4,321.

1. PATENTS—ANTICIPATION—EVIDENCE OF PRIOR STRUCTURE.

The testimony of a witness as to the existence and use of a structure essentially the same as that of a patent 12 or 15 years prior to the time of giving the testimony, unsupported by any exhibit, is too uncertain and unreliable to establish anticipation.

2. SAME—INVENTION—EVIDENCE.

The fact that a large number of inventions have been made, and patents granted, relating to the same subject-matter, none of which discloses the device of a later patent, nor any which so successfully accomplished the result sought, is strong evidence that such patent discloses invention.

3. SAME—NEW COMBINATION OF OLD ELEMENTS.

The combination of two old elements in a single structure in a manner which produces a new and useful result, or an old result in a more facile, economical, and efficient way, may involve invention.

4. SAME—INFRINGEMENT—PACKAGE FOR BISCUIT.

The Peters patent, No. 621,974, for a method of and means for packing crackers, and the like, consisting of the use, with an ordinary collapsible and interlocking carton, of an inner lining of waxed or paraffined paper, so interfolded between the interlocking flaps of the carton as to form an integral structure, construed, and held not anticipated, and to disclose patentable invention; also held infringed.

5. SAME—LIABILITY FOR INFRINGEMENT—OFFICERS OF CORPORATION.

The managing officers of a corporation, who actually participated in the adoption and use by the corporation of an infringing device, are liable for the infringement, as joint tort feasors.

6. SAME—SUIT FOR INFRINGEMENT—PARTIES.

A licensee whose license is not such as to amount to an assignment of the patent is not a necessary party complainant in a suit for its infringement.

In Equity. Suit for infringement of letters patent No. 621,974, for a method of and means for packing biscuits, crackers, or the like, granted to Frank M. Peters March 28, 1899. On final hearing.

Earl D. Babst, Boyle, Priest & Lehmann, and Offield, Towle & Linthicum, for complainant.

Collins, Jamison & Chappell, Higdon, Longan & Hopkins, and Bakewell & Cornwall, for defendants.

ADAMS, District Judge. This is a suit to restrain the infringement of letters patent of the United States, No. 621,974, granted to Frank M. Peters, for new and useful improvements in methods of and means for packing biscuits, crackers, or the like. While the defendants allege in their answer that the invention of the patent was dis-

¶ 3. See Patents, vol. 38, Cent. Dig. § 470.

closed by a large number of prior publications, and that it was in public use for many years, and that it had been described and patented in a large number of foreign patents prior to the date of Peters' application, and that Peters had abandoned his invention before he made application for the patent, there is found no substantial evidence supporting any of these defenses. The real defenses, as made by the proof and argument, are that Peters' patent is void for want of patentable novelty, and that defendants do not infringe. These real defenses will therefore be considered in the order stated.

There are four claims alleged to have been infringed by the defendants, as follows:

"(1) The herein-described method of packing biscuits, crackers, or the like, which consists in completely enveloping the same in an uncut or continuous lining or protective sheet and an outer sheet or blank, of heavier, but flexible, material, provided with marginal flaps, by superposing the lining or protective sheet upon the blank, and then simultaneously folding both said sheet and said blank, by the aid of a suitable former, into the form of a box or carton, overlapping and tucking said flaps during said folding, and thereby interfolding the marginal portions of the lining or protective sheet with the flaps of the blank, and securing the flaps to hold the package closed, substantially as described.

"(2) The herein-described box or carton for crackers, biscuits, or the like, comprising an internal lining composed of a sheet of protective paper, completely enveloping the contents, and an outer sheet, of heavier, but flexible, material, having overlapping and interlocking flaps, with which the marginal portions of the lining sheet are interfolded, substantially as described.

"(3) The herein-described box or carton for biscuits, crackers, or the like, comprising an internal protective lining, composed of a single continuous or unbroken sheet, of material such as waxed paper, and an external covering, of heavier, but flexible, material, suitably cut and scored to provide overlapping and tucking flaps, said sheets being adapted to be simultaneously folded while one is superposed upon the other, and said flaps being overlapped and tucked, and the marginal portions of the lining interfolded therewith, and the package thereby secured without extraneous fastening means or perforating the lining, substantially as described.

"(4) The herein-described box or carton, comprising an internal protective lining, composed of a single continuous or unbroken sheet of material, such as waxed paper, and an external covering of heavier material, suitably cut and scored to provide overlapping and tucking flaps, and said lining sheet being of such dimensions as to provide a top fold adapted, when folded, to afford a triangular flap of greater length than the width of the box, and to be engaged by the top flap of the external covering, and pass therewith into the space between the edges of the front of the covering and the lining-sheet, said flaps being overlapped and tucked, and the marginal portions of the lining interfolded therewith, and the package thereby secured without extraneous fastening means or perforating the lining, substantially as described."

These claims, it will be observed, are, first, for a method or process of producing the box of the patent; second, for the box itself, resulting broadly from carrying out the process of production; third, for the box itself, with a certain limitation, consisting of scoring the external sheet so as to provide a more facile method of formation; fourth, for the box itself, with the limitation as to the scored external sheet, and a further limitation providing for a triangular flap in the lining or internal sheet, to be engaged by the top flap of the external sheet so as to fasten down the cover. The invention, as disclosed in the specification, is for a combination of any of the well-known forms

of blanks having overlapping and interlockable ends or flaps which prior thereto had been employed for making paper boxes with an interior lining sheet of waxed or paraffined paper, so that by a certain peculiar interfolding of the lining sheet between the interlocked flaps of the external sheet a new and useful result is secured. This result is claimed to be an inexpensive package for holding bakery products, which excludes moisture and dust, holds its contents firmly in position, prevents breakage, and preserves their freshness and flavor. In the language of the description:

"The resulting package is one in which the crackers are completely enveloped and inclosed in a protective envelope of paper, preferably waxed or paraffined paper, which is moisture proof and grease proof, without any openings which may gape and admit moist air to the contents; and this envelope is interfolded with the various flaps and sections of the paper box or carton. (hereinbefore called the 'external sheet') within which it and the crackers are inclosed in such a manner that the interfolded portions of the lining sheet close the spaces between the flaps of the box or carton, and more effectually protect the contents thereof, while at the same time both the lining sheet and box or carton are so interfolded as to form, in effect, a unitary structure; it being impossible for the lining to move relatively to the box or carton, and the two holding the crackers firmly in place, and preventing movement and consequent breakage of these latter."

This box is produced by superposing a lining sheet upon a flat blank of any of the old forms of collapsible paper boxes, which are provided with interlocking flaps, folding them together simultaneously, and substantially as follows: Folding up the front section, turning in its end flaps, turning up the side flaps so cut as to partially cover the end flap of the first section, bringing the back section up against the former (over which the box is being constructed), turning in its end flaps, and locking the same by interposing its key into the slot made for its reception in the end flaps of the first-mentioned section. By this process, thus generally described, a box is produced like figure 10 of the patent, as follows:

FIG. 10

The foregoing cut is intended to show a box so far formed as to be ready for filling. The further steps requisite to closing the box .after it is filled involve bringing over the upper flap of the carton so as to form the covering or lid of the box, and tucking its lining inside of the section first turned up. By the use of the two elements, namely, the outside carton and the inside lining, and the interfolding and interlocking process just referred to, a box is produced completely lined with the paraffined or waxed paper; and this lining, by having its ends doubly interfolded between the end flap of the first section and the side flap, and also between the side flap and the end flap of the back section, and having the two main sections of the carton interlocked over these interfolded ends of the lining, is so firmly united to and interformed with the outside carton that the unitary structure referred to in the patent, namely, such a structure that its lining is impossible of movement relatively to the carton itself, and holds its contents firmly in place, preventing movement or consequent breakage thereof, is constructed. It is contended by defendant's counsel that this structure does not involve patentable invention.

This record is full of exhibits of boxes and packages used in the prior art. I have examined all of them, including a great variety of candy, popcorn, cracker, and tobacco packages; and apart from exhibit 16, to which I will refer later, it is, in my opinion, safe to say that none of them show the invention of this patent, or anything suggestive thereof. There are numerous packages formed of two sheets of paper —one a lining, and the other a heavier outside covering—and many of these are interfolded in various ways. Some of them have the flaps of the outside covering or carton interlocked, but none of them have the inside lining interfolded between the interlocking parts of the outside carton, and none of them produce the unitary and useful product resulting from such coexisting, cotemporaneous interfolding and interlocking of the separate parts. Likewise a large number of patents, domestic and foreign, are relied upon by defendant's counsel as disclosing the invention of the patent in suit. Most of them relate to collapsible cartons with interlocking flaps, the existence of which is conceded in the specification of the patent in suit, and the same are appropriated as one of the elements of the combination of the patent. Some of them relate to cartons with superposed sheets or linings, not, however, remotely suggesting the notion of so interlocking the flaps of the carton as to interfold and bind between them the ends of the lining so as to make a unitary structure. Others relate to bags with inner linings, but disclose nothing of the method or product of the patent in suit.

Defendant's expert selects the Howe and Davidson patent, No. 511,080, as the one which presents the nearest approach to the invention of the patent in suit; but this patent, when examined, is found to relate exclusively to the knockdown or collapsible carton, with no suggestion of the combination of such a carton with an inner lining so interfolded between its interlocking flaps as to form an integral part of it.

The Munson patent, No. 288,255, of date November 13, 1883, is especially relied upon by defendant's counsel, in argument, as disclos-

ing the invention of the patent in suit. I am unable, after a careful consideration of the patent itself, and the argument made on it, to agree with counsel. The device of the Munson patent appears to me to be merely an outside carton provided with a closing flap adapted to be engaged with a slot so as to close and secure the end of the box. The claims are as follows:

"(1) A paper box having a tubular body provided with flaps for closing one or both of its ends, and provided with a lining, attached to the inside of its body, that may be folded to close one or both of its ends independently of its folding flaps, substantially as described.

"(2) A paper box, the body whereof is provided at one or both ends with closing-flaps, one flap being provided with angular slots or pockets, as 11', and the opposite flap with corners adapted to enter and engage or be held in said pockets to close and secure the end of the box, substantially as described."

It is true, the description of the Munson patent refers to the interior wrapping or lining pasted or otherwise secured to the interior of the box, but no connection at all is shown between the folded ends of this lining and the interlocking flaps of the box. Considering the claims and description together, it is clear, in my opinion, that the invention of the Munson patent was merely a collapsible carton, involving no conception or suggestion of the device of complainant's patent.

Many other patents are called to the court's attention as anticipatory of complainant's invention, or as illustrating the prior art. They have all been duly considered, and, in my opinion, utterly fail to disclose the essential feature of the combination of the patent in suit. If the Howe and Davidson patent or the Munson patent, already considered, do not disclose complainant's invention, none of the others do. For these reasons, no detailed consideration will be given in this opinion to any of the other patents pleaded or found in the proof.

Exhibit No. 16, already alluded to as one of the unpatented structures relied upon by defendants as disclosing the invention of the patent, is, at best, a box made by witness Sallie Kemper, expressive of her remembrance of a box employed by her employers, at Nashville, some 12 or 15 years before she gave her testimony. If there were no confusion or inconsistency in the statements of the witness, and if the box, Exhibit 16, was intended by her to be a reproduction of the box as used 12 or 15 years ago by her employers, this kind of testimony, uncorroborated and unaccompanied by any exhibit of a box in actual existence at the time to which the evidence relates, would be too uncertain and unreliable to defeat a subsequent grant of the patent for the same device. Barb Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153; Kraatz v. Tieman (C. C.) 79 Fed. 322. In my opinion, however, this Exhibit 16 is not a fair expression of the understanding of the witness herself. Her testimony in relation to Exhibits 15 and 16, taken together, shows that counsel have misconceived her real meaning. For either or both of the foregoing reasons, Exhibit 16 is of no evidential value as an anticipation of complainant's invention. It results that neither in prior patents nor prior unpatented structures is the complainant's invention shown or suggested.

This conclusion leads next to a consideration of the essential nature, in and of itself considered, of the device of the patent, with a view of determining whether it discloses such inherent simplicity as to be classified as a development of ordinary mechanical skill, or as the result of inventive faculty. It is true, the paper box in question belongs to a comparatively humble and lowly art. The two elements which compose it are simple and well known, but the union of these two elements in the way and manner and for the purpose disclosed by the patent was obviously not well known at the time of complainant's invention. The large number of patents and exhibits found in this record looking towards the result achieved by the patentee disclose an unsatisfied need. The art had been diligently practiced for many decades, and divers devices for packing crackers, candy, and other like products had been resorted to; but none of them accomplished the desired purpose. Such being the case, when a patent is finally granted for a device which does accomplish the desired result, the court should not look with disfavor upon it. Key Stone Manufacturing Co. v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103. The simple scheme of subjecting the two elements before then each separately well known, to a process of unification, consisting of so folding and interfolding them as to create a hitherto unknown unitary structure, was left to the complainant. The argument that this new and peculiar combination was a mere aggregation of old elements, and a mere product of ordinary mechanical skill, so obvious as to be readily perceived and taken advantage of by those skilled in the art, is, in my opinion, fully answered by the fact that none of the numerous inventors in defendants' line of industry, and none of the skilled artisans engaged for years in that industry, with the problem urgently confronting them, ever did discover its solution. As said in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, "It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and bring it into notice." It seems to me that the step taken by complainant in uniting and unifying the two old elements in question in the way and manner already disclosed was the final step in the line of invention in the industry in question, which turned failure into success, within the true meaning of the doctrine announced by Barb Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154. The treatment of the two elements in question, in my opinion, produced a new and useful result. It certainly disclosed a method of producing an old result in a "more facile, economical, and efficient" way; and the case is brought directly within the doctrine announced by the Court of Appeals of the Eighth Circuit in divers cases, and particularly the case of National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 106 Fed. 693. The "barb" of the Barb Wire Patent, supra, the "collar button" of Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, and the "dam" of Du Bois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729, 39 L. Ed. 895, are each and all of them very simple devices; but they served a new and useful purpose, and were held by the Supreme Court of the United States to involve patentable invention. The combination resulting in the box involved in the present

case is no more simple than the "barb," the "collar button," or the "dam" involved in the cases just cited. In my opinion, it took the inventive faculty to produce it. Moreover, the proof abundantly shows that prior to the invention of this patent the old paper cartons or boxes were inadequate to the demands of the service required of them; that the contents deteriorated rapidly in substance and flavor; that they were subjected to the baneful effects of air, moisture, and dust; and that the hermetically sealed tin cans or boxes would alone serve the purpose of successfully marketing the same. This tin box was so expensive as to be practically prohibitive. Since the introduction of the box of the patent, a radical change has taken place. This box has been found equal to the climatic and other local conditions of all parts of the country—from New Orleans to New York, from Florida to Minnesota, and California to Massachusetts. The uniform testimony from all these regions is to the effect that the contents of the box are preserved in their original freshness and flavor. Prior to 1899 the National Biscuit Company, one of the licensees of the complainant, had been putting up and selling its bakery products in the best carton or box then known to the trade. Since that time the same company has been using the box of the patent, and one of its bakeries, namely, the Kennedy Bakery, has increased its product nearly 13-fold per annum, and this I think the evidence shows to be largely the result of the use of the box of the patent. I am not unmindful of the argument of defendant's counsel to the effect that the advertising and labels upon the box have materially enhanced the sales, but, giving due consideration to all such facts, I am of opinion that the record fairly discloses that the large output in the Kennedy Bakery is chiefly the result of the employment of the box of the patent in suit. Not only so, but the defendants themselves recognize the great advantage and superiority of complainant's box by abandoning the box which they had theretofore employed—the same being one which they now insist discloses the invention of the patent—and by resorting to the use of complainant's box instead. The whole testimony, in my opinion, clearly shows that the box of the patent materially facilitates the distribution of inexpensive food products to consumers, and at the same time lessens the cost and enhances the intrinsic value of such products. Such being the case, the authorities are uniform to the proposition that doubt as to patentable novelty should be resolved in favor of sustaining the patent. Smith v. Goodyear Dental Vulcanite Company, 93 U. S. 486, 23 L. Ed. 952; Consolidated Safety Valve Company v. Crosby Steam Gauge & Valve Company, 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939; Gandy v. Main Belting Company, 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272; Magowan v. New York Belting Co., 141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781; Hobbs v. Beach, 180 U. S. 383, 392, 21 Sup. Ct. 409, 45 L. Ed. 586; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., supra.

Have the defendants infringed? The defendant corporation, of which defendant Winkelmeyer is president, and defendant Grubbs is general manager, is shown by the proof to have secured the services of one Sallie Kemper as its forelady. She had been for some months prior thereto in the employ of the National Biscuit Company, one of

complainant's licensees, engaged in the work of packing crackers. About two weeks after defendant corporation employed her, it abandoned their old form of packing box—the same being one of the boxes shown in the prior art—and began packing its product in the box now claimed to be an infringement of complainant's device. The forelady, Kemper, gave the necessary instructions, and had charge of making the change. The general offices of the defendant corporation not only presumably, but in fact, so far as Grubbs is concerned, participated in the conferences resulting in the change. Under such circumstances, I have no doubt that the corporation itself and its general executive officers are joint tort feasors in an infringement, if the same is made to appear. The executive officers of a corporation, who necessarily inspire all its acts, cannot shield themselves behind an artificial, and sometimes irresponsible, creation, from the consequence of their own acts, even though performed in the name of the artificial body. In determining the issue now under consideration—whether the defendants have infringed complainant's patent—it is fair, in my opinion, gathered from the evidence just epitomized, to presume at the outset that the defendants intended to do so. The relation of witness Kemper to the parties involved in this litigation, her conduct while in the employment of the National Biscuit Company, her conduct after entering defendants' service, the speedy transition by defendants, after Kemper entered their employment, from the method of packing their product then in vogue to at least a close approximation to the method of complainant's invention, all are very suggestive of wrongful premeditation and design. Be this, however, as it may, the package employed by defendants is, in my opinion, not essentially different from the box of the patent. It employs the elements of the claims of the patent in suit. It is constructed, practically, by the method described in the patent, and it produces the result accomplished by the patent. The outer covering, in the form of a recognized carton; the inner lining of paraffined or waxed paper; the interfolding of the ends of the lining between the interlocked flaps of the carton; the resulting unitary structure, fitted and adapted to snugly hold and protect the contents of the box from air, moisture, and dust—are all shown in defendants' package. The only difference pointed out in argument is that in the method of constructing their box the defendants turn up the side flap of the carton before they turn in the end flap of the first section. This results in so releasing the lining from its engagement with the end flap of complainant's first section that it may be pulled out in an upward direction when the lid of the box is open, without dismantling the box itself. This, however, in my opinion, does not essentially distinguish defendants' box from complainant's. Both have the ends of the lining so doubly interfolded between the interlocked flaps of the carton as to signally differentiate them from prior structures, and make a substantial, self-contained, unitary structure of the two elements.

Defendants' counsel, in argument and brief, have earnestly contended that the invention of complainant's patent, when understood in the light of the description and claims, involves such an interfolding of the inner lining within the flaps of the carton as will so effectually lock it

that it cannot be pulled out of the box when the lid is open without tearing the lining or dismantling the box. I am unable, after a most patient examination and analysis of the description and claims, to agree with counsel in this contention. In repeated instances found in the specification the patentee undertakes to make it plain that the lining is subject only to the interfolding process, while the ends of the carton or blank are alone required to be interlocked. The words "interlocked flaps" and "interfolded lining," or their equivalent, are repeatedly used in such juxtaposition and relation that violence would be done to language, to hold that the interlocking, in any case, is intended to relate to the lining itself. If the patent, when properly construed, required the lining to be interlocked by or within the flaps of the carton, the defendants' device does not infringe complainant's patent. Such, however, not being the true interpretation of the patent, the defendants' device, in my opinion, does constitute an infringement.

Some argument is made as to the invalidity of the first claim of the patent, on the ground that it is for an illegitimate process, within the meaning of the patent law. This may or may not be tenable, but as I believe the combination involved in the manufactured product itself, as broadly claimed in the second claim, involved patentable novelty and invention, and that the defendants have infringed the same, it becomes quite immaterial and unnecessary to formally pass on the contentions as to the first claim.

It was contended in argument that the failure to join the National Biscuit Company as complainant in this case constitutes a fatal defect of parties. This contention, in my opinion, is without merit. The bill alleges that the National Biscuit Company is a licensee of complainant, with conditional and limited rights in the use of the invention for packing bakery products. The answer touching this allegation is as follows:

"The defendants deny that such allegations, even if true, are material to this issue, or in any way prejudicial to, or afford any cause of action against, these defendants, or give any patentable quality to the alleged invention."

This portion of the answer is obviously in the nature of a demurrer, and cannot be treated as a denial of the allegations of the bill. It, in effect, admits the allegations as made, and challenges their legal sufficiency. It is claimed that the proof shows the allegations in question to be essentially true, but this I deem quite immaterial. The complainant pleaded such a conditional license in the National Biscuit Company as leaves the title to the patent in the patentee. Certainly the bill does not show any exclusive license, amounting to an assignment of the patent to the National Biscuit Company. Such a licensee is not a necessary party complainant in an infringement case. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. Not until defendants filed their statement of points to be relied upon in argument did they raise any question as to defect of parties. This was too late. It should have been done by plea or answer, so as to clearly present the issue, and give the complainant an opportunity to meet it.

There will be a decree for an injunction as prayed for, and a reference to a master to take an account of profits and damages.