EDDY et al. v. KRAMER et al.

EDDY v. MATHER et al.

(District Court, E. D. Pennsylvania.  February 5, 1918.)

Nos. 1513, 1515.

1. PATENTS ⊙⇒287—INFRINGEMENT BY CORPORATION—LIABILITY OF DIRECTORS.
    Directors of a corporation by whose direction acts of infringement are committed by subordinate officers or agents are liable individually therefor.
2. PATENTS ⊙⇒62—ANTICIPATION—EVIDENCE TO ESTABLISH.
    The uncorroborated testimony of witnesses as to the date when they saw alleged anticipating articles and their description *held* insufficient to establish anticipation.
3. PATENTS ⊙⇒58—ANTICIPATION—BURDEN AND MEASURE OF PROOF.
    The burden of proving anticipation by clear and satisfactory evidence rests upon the defendant alleging it, and every reasonable doubt should be resolved against him.
4. PATENTS ⊙⇒328—VALIDITY AND INFRINGEMENT—PAD FOR DAILY DATE SIGNS.
    The Eddy patents, No. 1,153,543 and No. 1,153,545, each for a pad for daily date signs, were not anticipated, and while not pioneer add sufficient to the prior act to disclose invention; also *held* infringed.

In Equity.  Suits by James Francis Eddy and the Dando Printing & Publishing Company against Henry F. C. Kramer, Joseph De Lone, and Frank Hobson, individually and trading as the Quaker City Calendar Company, and the De Lone Ehmling Company, Incorporated, and by James Francis Eddy against Charles E. Mather, Victor Mather, and Gilbert Mather, copartners trading as Mather & Co.  On final hearing.  Decrees for complainants.

Ward W. Pierson, of Philadelphia, Pa., and Russell Everett, of Newark, N. J., for plaintiffs.

Arno P. Mowitz and Fenton & Blount, all of Philadelphia, Pa., for defendants.

DAVIS, District Judge. James Francis Eddy and Dando Printing & Publishing Company filed their bills against the defendants in the above-stated causes, charging them with infringing the three claims of United States patent No. 1,153,543, and the first claim of United States patent No. 1,153,545. The three claims of the first-mentioned patent are as follows:

"1. The hereindescribed pad for daily date signs, comprising in combination a plurality of leaves, a cap consisting of a piece of sheet material bent longitudinally into channel form with its intermediate portion lying upon the top edges of said leaves and its opposite parallel side flanges lying one in front of and the other behind the upper part of said leaves, the rear flange of the cap having a tongue depending therefrom substantially in the plane of the flange adapted to be exposed for entering a supporting slot by flexing the leaves and cross-pins extending through said cap flanges and leaves adjacent the opposite ends thereof connecting said flanges and supporting said leaves.

"2. The hereindescribed pad for daily date signs, comprising in combination a plurality of leaves, a cap consisting of a piece of sheet material bent longitudinally into channel form with its intermediate portion lying upon the top edges of said leaves and its opposite parallel side flanges lying one in front of and the other behind the upper part of said leaves, the rear flange of the cap having a tongue depending therefrom substantially in the plane of the flange adapted to be .exposed for entering a supporting slot by flexing the leaves and having an edge portion adjacent said tongue adapted to engage the wall of the slot as a stop, and cross-pins extending through said cap flanges and leaves adjacent the opposite ends thereof connecting said flanges and supporting said leaves.

"3. The hereindescribed pad for daily date signs, comprising in combination a plurality of leaves, a cap consisting of a piece of sheet material bent longitudinally into channel form with its intermediate portion lying upon the top edges of said leaves and its opposite parallel side flanges lying one in front of and the other behind the upper part of said leaves, said cap extending substantially the entire length of the top edges of the leaves and having a tongue depending from the free edge of its rear flange adapted to be exposed for entering a supporting slot by flexing the leaves and having adjacent said tongue edge portions of said rear flange adapted to seat on the wall of the slot, and cross-pins extending through said cap flange and leaves between the ends thereof and said seat portions of the rear flange connecting said flanges and supporting said leaves."

The claim of the second patent is:

"The hereindescribed pad for daily date signs, comprising in combination with a plurality of leaves, a cap having opposite parallel flanges one in front of said leaves and the other behind them and an intermediate portion at the top edges of said leaves holding said flanges in spaced relation, said flanges including pairs of opposite ears at the ends of the cap and the rear flange including a depending tongue between the ears and separated therefrom, said tongue being adapted to hook over a strip or the like while said ears lie against its front, and cross-pins extending one through the opposite ears of each pair and the leaves of the pad so as to connect the cap flanges and support the leaves while leaving the tongue free to be exposed for entering a supporting slot by flexing the leaves."

The defendants urge that the bills should be dismissed for technical reasons:

1. The bill against Mather & Co. should be dismissed for lack of proof of any alleged infringing act committed between the issue of the patents, September 14, 1915, and the filing of the bill, December 31, 1915. The evidence is that Mather & Co. on April 22, 1915, ordered calendars from the Quaker City Calendar Company, and those

calendars, except a few which were sent Mather & Co., were sent direct to customers of Mather & Co. by the Quaker City Calendar Company. The said surplus calendars, not sent out by the Quaker City Calendar Company to customers of Mather & Co., were delivered to Mather & Co. "some time during December, 1915," and some of those few were used by Mather & Co., being hung upon the walls of their office on December 29, 1915, just how much prior to that date does not appear. The Quaker City Calendar Company in sending said calendars to customers of Mather & Co. were acting as their agent, and Mather & Co. are liable for the said acts of their agent. These calendars were for the year 1916, and were sent out some time during December, 1915, and on or before December 29, 1915, on order of April 22, 1915. The presumption is that they were sent out some time before December 29, 1915. The surplus were delivered to Mather & Co., "sometime during December, 1915," and on or before December 29th. It follows that Mather & Co. did sell said calendars, and used some before December 31, 1915, the date the bill was filed against Mather & Co.

2. Individuals composing a corporation defendant, charged to infringe, are not liable in their individual capacity for torts of the corporation, and the bill should be dismissed as to all the codefendants, except the De Lone Ehmling Company.

[1] This statement may be the law as to the subordinate agents or mere employés of an infringing corporation, but it is not as to directors:

"We are of opinion, therefore, that by the general principles of law, and by analogy with other torts, a director of a corporation, who, as director by vote or otherwise specifically commands the subordinate of the corporation to engage in the manufacture and sale of an infringing article, is liable individually in an action at law for damages brought by the owner of the patent so infringed. As with other infringers, it is immaterial whether the director knew or was ignorant that the articles manufactured and sold did infringe a patent." National Cash Register Co. v. Leland, 94 Fed. 502, 511, 37 C. C. A. 372, 381; National Car-Brake Shoe Co. v. Terra Haute Car & Mfg. Co. (C. C.) 19 Fed. 515; Peters v. Union Biscuit Co. (C. C.) 120 Fed. 679, 687; Harrington v. Telegraph Co. (C. C.) 143 Fed. 329, 337.

This rule was restricted in the cases of Hutter v. De Q. Bottle Stopper Co., 128 Fed. 283, 286, 62 C. C. A. 652; Cazier v. Mackie-Lovejoy Mfg. Co., 138 Fed. 655, 656, 71 C. C. A. 104, 106, to directors who had infringed personally or had directed infringement and "acted beyond the ordinary scope of their office." In the case at bar, the defendants, De Lone and Hobson, who composed the Quaker City Calendar Company, sold the calendars to jobbers all over the country. They were individuals trading under a firm name, and composed the whole firm, and so, as individuals, actually carried on the business of selling, and are liable if the patents in question were infringed. De Lone and Hobson are two of the directors who managed the corporate defendant. They directed the business transacted by both the De Lone Ehmling Company, Incorporated, and the Quaker City Calendar Company. Under such circumstances, they are liable. National Cash Register Co. v. Leland et al., supra. "The executive officers of a

corporation, who necessarily inspire all its acts, cannot shield themselves behind an artificial, and sometimes irresponsible, creation, from the consequence of their own acts, even though performed in the name of the artificial body." Peters v. Union Biscuit Co., supra. Kramer was given the territory of Philadelphia, and sold upon a commission. He was not the ordinary employé or officer of either company. He is liable, if the patents were infringed.

3. Claim 1 of the second patent is "wholly indistinguishable in substance from the disclosure and claims of the first patent. * * * No man can have two valid patents for the same or substantially the same thing." Claim 1 of the second patent does, however, disclose some features not contained in the first patent, for instance, "pairs of opposite ears" upon the flanges "at the ends of the caps." While the tongue hooks over or behind a strip, the rear ears, located at the opposite lateral edges of said tongue, lie against the front of the strip which is gripped, as it were, between the depending tongue and the said ears. The pad is thus held more firmly, and is prevented from rocking or sagging. There is nothing like, or substantially like, this in the first patent. I am therefore unable to agree with the conclusion of counsel for defendant.

As I understand the position of the defendants there is practically no denial of the acts charged on their part which the plaintiffs claim constitute infringement. The defendants Hobson and De Lone seem to have received their idea of the structure of the calendar, which they manufactured and sold from the defendant Henry F. C. Kramer, who was employed in Philadelphia, from October to December, 1914, by the Dando Company, where the patentee, Eddy, was working. The said company upon which Eddy, who had applied for patent, had conferred the right to use all the features of his patent during the said months was manufacturing and selling the Eddy calendars. After leaving the Dando Company, Kramer, knowing that Eddy had applied for patents, went to the De Lone Ehmling Company, Incorporated, one of the above-named defendants, and "submitted to it the pad as it was, and asked them if they could make it. * * *" They said they could "and subsequently did." He then took to a tinsmith a cap from one of the calendars made by the Dando Company and sold to the Philadelphia Record and had some samples made which he turned over to the De Lone Company. These samples were given to George Fries Sons, tinworkers, who thereafter made the metal caps for the De Lone Company, which assembled the metal caps and printed leaves and backs, and sold them to the retail trade through the Quaker City Calendar Company, composed of De Lone and Hobson, and formed for said purpose.

The defendants justify their action in the manufacture and sale of the calendars in question on the ground that the claims alleged to have been infringed were anticipated; that the alleged new features do not constitute invention, being merely the results of mechanical skill, and therefore the patents are invalid.

[2, 3] In order to establish their invalidity, the defendants introduced in evidence several calendars and patents. The first was the

"Tear Kleen" calendar of the Herold Company, of Milwaukee, for the year 1915, defendants' Exhibit B, disclosing features or structures similar to those disclosed in the claims in question in the plaintiffs' patents. They introduced a circular describing the same and soliciting orders for 1915, defendants' Exhibit C, and a blotter or pad, on the back of which is a picture of the Herold calendar and the date "March, 1914." This calendar, they alleged anticipated the Eddy patents. It was pretty clearly established, that the inventions, if such they be, of the first patent, No. 1,153,543, was completed February 6, 1913, and of the second, No. 1,153,545, March 20, 1913, and that application for said patents were filed, respectively, on March 17, 1913, and October 17, 1913. The earliest date of the Herold calendar established with any certainty is contained on the blotter, March, 1914. Augustus J. Keil testified that he saw a Herold "Tear Kleen" calendar in the building of the Franklin Trust Company in the fall of 1912, and that he opened correspondence with said company early in 1913, and received a number of calendars from it, among which was one similar, so far as he could then judge, in all respects to the Herold calendar. This calendar he showed, he says, to Frank Hobson, one of the defendants. In this Hobson corroborates him. In this way, the defendants seek by the Herold calendar to anticipate and antedate the alleged invention, constituting the patents in question. The acceptance of this testimony, as a fact, is met with several difficulties. The testimony was not clear and positive, but indefinite and in some respects contradictory. It was based solely upon memory, both as to the date and as to the resemblance of the calendar, said to have been seen by them, to defendants' Exhibit B, a calendar for the year 1915. The witnesses, even if trying their best to recall exactly what they declare they saw, may be mistaken as to the very features constituting the novel ideas in the Eddy patents, for there appears to have been no special reason to call unusual attention to the calendar. After a period of more than three years, it can hardly be expected that they would be able to recall with exactness the principal features and structures of the calendar which they saw. Neither of the witnesses were experts in mechanics or patents, and had no particular reason to rivet attention upon that particular calendar. Memory after such a long time, with the best of men, is fallible, and plays such tricks upon us that it is unsafe to rely entirely upon it under such circumstances. This is especially true when possible interest, bias, or perjury is taken into account. No attempt whatever was made to corroborate the testimony of these witnesses. The defendants did not call any officer of the Franklin Trust Company to establish the fact that it received any such calendar from the Herold Company in 1912. No witness from the Herold Company or deposition of any kind from any one connected with such company, or correspondence, was offered to show when the calendar like defendants' Exhibit B was first made by that company, and no explanation was given as to why no attempt was made to corroborate these witnesses upon this important testimony. I am therefore not satisfied to accept the uncorroborated testimony of the said witnesses as to the date when they saw the Herold calendar, or

as to its resemblance to the defendants' Exhibit B. The possibility, or even probability, of mistakes is too great. Defendants' Exhibits B, C, and D may therefore be eliminated from further consideration. Anticipation must be made out clearly and satisfactorily. The law requires not conjecture, but certainty. The burden of proof rests upon the defendants, and every reasonable doubt should be resolved against them. Coffin v. Ogden, 85 U. S. (18 Wall) 120, 124, 21 L. Ed. 821; Clough v. Mfg. Co., 106 U. S. 178, 1 Sup. Ct. 198, 27 L. Ed. 138.

The defendants rely upon the British patent, No. 9,494. The basic idea of this patent is an attachable or detachable date pad to a back or mount. This doubtless led defendants' expert to say that the basic idea in the Eddy patents is a device whereby a date pad can be supported upon a suitable back, so that it can be attached or detached. In his statement, Eddy does refer to and describe the attachable and detachable character of the pad on the mount, one of the objects being "to provide means whereby the pad may be conveniently and expeditiously applied to and removed from the back." The claims, however, do not make this the basic idea. "There is no contention on behalf of the plaintiff that the claims in suit are broad or basic claims, or that the patent is a pioneer patent." The patentee sought "to obtain protection only upon the novel details of his daily date sign." The tongue in Eddy's patent is connected directly with the cap, being, in part, a continuation of the rear flange, "depending from the free edge" thereof, and is substantially in the plane thereof. In the British patent there is no cap at all. This patent does not disclose any means for holding the leaves of the pad d together or upon the base o, which function is performed by the cross-pins in the Eddy patents. The leaves are evidently held together, but whether by pins, gum, glue, or in some other way is not disclosed. The patent discloses a pad having a tongue attached to the back thereof, but discloses no other element of any combination described in the Eddy patent.

They further rely upon a Swiss patent, No. 13,889. In this patent, there is no equivalent for the rear flange of the cap, a pair of cross-pins or any means for supporting them, the ears, as in the second patent in suit, or of the tongue element depending from a rear flange, and therefore no "edge portions" or "seat portions" of the rear flange to support the pad. The Swiss patent, therefore, does not anticipate the claims of the Eddy patents.

The Hoyt patent, No. 33,074, was the other introduced by them. This does disclose a hanger, B, but it is hardly the equivalent of a cap consisting of a piece of sheet metal bent longitudinally into channel form with its intermediate portion lying upon the top edges of said leaves and its opposite parallel side flanges lying one in front and the other behind the upper part of said leaves. The patentee, Hoyt, had no such idea as is disclosed by the cap construction of the Eddy patents. The Hoyt patent does not disclose a cap, or the equivalent thereof, the rear flange of which has "a tongue depending therefrom substantially in the plane of the flange adapted to be exposed for entering a supporting slot by flexing the leaves."

[4] The patents of Eddy, while not pioneer, depart from and add

to the prior art in such a way and to such extent as to amount to invention. The calendars manufactured and sold by the defendants were evidently copied directly and deliberately from plaintiffs' calendars. A fair interpretation of the evidence forces this conclusion.

The four claims in question of the Eddy patents, while not differing from one another in any great degree, nevertheless differ. The words in claim 2 of patent 1,153,543, "and having an edge portion adjacent said tongue adapted to engage the wall of the slot as a stop," are not contained in claim 1. Claim 3 adds that:

"Said cap extending substantially the entire length of the top edges of the leaves * * * and having adjacent said tongue edge portions of said rear flange adapted to seat on the wall of the slot."

Claim 1 of patent No. 1,153,545, adds the ear element to the three claims of the first patent. The claims are, in my opinion, valid, Schenk v. Singer, 77 Fed. 841, 23 C. C. A. 494; Mast v. Dempster, 82 Fed. 327, 27 C. C. A. 191; Consolidated Car Heating Co. v. West End St. Ry. Co., 85 Fed. 662, 29 C. C. A. 386; Dececo v. Gilchrist, 125 Fed. 293, 60 C. C. A. 207.

Being valid, they have evidently been infringed, and defendants are liable for the damages sustained by the plaintiffs on account of said infringement.